UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMANUEL RISBROOK,
individually and on behalf of all others
similarly situated,                                   Case No. 19-11262

                            Plaintiff,                Paul D. Borman
                                                      United States District Judge
v.

BLUE HORSESHOE NETWORK, LLC,
d/b/a BLUE HORSESHOE NETWORK,
INC. and ATOS DIGITAL HEALTH
SOLUTIONS INC. f/k/a BREAKAWAY
GROUP, LLC,

                            Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS (ECF NO. 58)

### INTRODUCTION

This is a Fair Labor Standards Act ("FLSA") collective action in which

Plaintiff Emmanuel Risbrook, individually and on behalf of 44 Opt-In Plaintiffs

(including Plaintiff), seeks unpaid overtime wages from Defendants Blue Horseshoe

Network, LLC d/b/a Blue Horseshoe Network, Inc. ("Blue Horseshoe") and Atos

Digital Health Solutions Inc. f/k/a The Breakaway Group, LLC ("Atos") (together

1

"Defendants").  Now before the Court is Plaintiff's Unopposed Motion for Approval of FLSA Settlement and for Attorneys' Fees and Costs. (ECF No. 58.) On September 3, 2020, counsel for Plaintiff and Defendants appeared before the Court for a telephonic status conference.  For the reasons that follow, Plaintiff's Unopposed Motion for Approval of FLSA Settlement and for Attorneys' Fees and Costs (ECF No. 58) is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Emmanuel Risbrook filed a Collective Action Complaint and Jury Demand against Defendant Blue Horseshoe on April 30, 2019, alleging overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  (ECF No. 1, Complaint.)  According to the Complaint, Defendant Blue Horseshoe is a "healthcare information technology firm" that employs consultants, such as Plaintiff, to provide "training and support to healthcare facilities in connection with the implementation of new electronic recordkeeping systems."  (*Id.* ¶¶ 13-14, PgID 4.) Plaintiff alleges that he and "other similarly situated consultants were knowingly and improperly classified as independent contractors, and, as a result, did not receive overtime pay for hours worked in excess of forty (40) in a workweek."  (*Id.* ¶ 2, PgID 2.)  Plaintiff sought to bring claims on behalf of himself and the following class of potential FLSA opt-in litigants: "All individuals who worked for Blue

2

Horseshoe providing training and support to Blue Horseshoe's clients in using electronic recordkeeping systems in the United States from April 30, 2016 to the present and were classified as independent contractors (the "FLSA Collective")." (*Id.* ¶ 11, PgID 3.)

On August 2, 2019, Defendant Blue Horseshoe filed a Motion to Dismiss and Compel Arbitration, contending that Plaintiff contractually agreed to a binding arbitration provision that expressly requires that all claims be arbitrated. (ECF No. 21.) On August 23, 2019, Plaintiff amended his Complaint to add Defendant Atos and defined the proposed collective as "all individuals who worked for either or both Defendants providing training and support to Defendants' clients in using electronic recordkeeping systems in the United States from April 30, 2016 to the present and were classified as independent contractors." (ECF No. 27, First Amended Collective Action Complaint.) Plaintiff also filed a Motion to Stay for Mediation, so that the parties could engage in non-binding mediation. (ECF No. 25.) The parties subsequently agreed to stay the case for purposes of engaging in alternative dispute resolution. (ECF Nos. 29, 36, 45.) Plaintiff filed notices of the Opt-in Consent Forms for the Opt-In Plaintiffs, in accordance with 29 U.S.C. § 261(b), (ECF Nos. 10, 11, 14, 16-20, 23, 26, 33, 37, 39, 44, 46, 50), and also filed four notices of withdrawal of Opt-in Consent Forms. (ECF Nos. 30, 38, 43, 47.)

3

Prior to the mediation, counsel for Defendants provided Plaintiff's counsel with payroll data regarding the overtime hours worked by Plaintiff and Opt-In Plaintiffs, which Plaintiff's counsel used to prepare a detailed, week-by-week calculation of the possible overtime damages for each of the FLSA Collective Members.  (ECF No. 58-2, Declaration of Harold Lichten ("Lichten Decl."), ¶ 8, PgID 401.)

On February 11, 2020, the parties participated in a full-day mediation before David Kotzian. Following additional negotiations, the parties entered into a Memorandum of Understanding on April 17, 2020.  The Memorandum of Understanding was subsequently reduced to a Settlement Agreement, attached as Exhibit 1 to the present Motion.  (ECF No. 58, Pl.'s Mot. at p. 3, PgID 359, citing ECF No. 58-1, FLSA Collective Settlement Agreement, PgID 378-97.)

The settlement resolves Plaintiff's and the Opt-In Plaintiffs' FLSA collective action.[1]  The Settlement Agreement defines the "FLSA Collective Members" as "Plaintiff and the 44 existing Opt-In Plaintiffs who performed consulting work for

_____

[1] Plaintiff's motion notes that "[a]t all relevant times, both Defendants have disputed the merits of the action, have asserted that Plaintiff and the Opt-Ins were properly classified as independent contractors, and have further asserted that the claims at issue in this action are subject to individual arbitration."  (Pl.'s Mot. at p. 3, n.1, PgID 359.)

either or both Defendants in the United States at any time between April 30, 2016 and February 26, 2020 (the "Relevant Time Period"), and who worked over 40 hours in a workweek during the Relevant Time Period[.]"   (Settlement Agreement ¶ 1, PgID 378.)

Under the Agreement, Defendants will pay $142,500.00 (the "Gross Settlement Amount") to resolve all claims asserted by Plaintiff and the FLSA Collective Members. (*Id.* ¶ 2, PgID 379.) "The Gross Settlement Amount is inclusive of attorneys' fees and costs, and any service award to the Named Plaintiff that is approved by the Court." (*Id.*) $45,000.00 (or 31.5% of the Gross Settlement Amount) will be paid to Plaintiff's Counsel for attorney fees, plus costs in the amount of $742.21. (*Id.* ¶ 3, PgID 379.) The Agreement seeks, subject to Court approval, a "Service Award" to Named Plaintiff Risbrook of $3,000.00 "in recognition of his service to the FLSA Collective Members." (*Id.* ¶ 4, PgID 379.) After payment of these amounts, the remainder shall constitute the "Net Settlement Amount." (*Id.* ¶ 5, PgID 380.)

The Net Settlement Amount will then be distributed as follows:  Each FLSA Collective Member will receive a *per capita* award of $1,000.00. (*Id.* ¶ 10(a), PgID 382.) After the *per capita* awards are subtracted from the Net Settlement Amount, the remainder of the Net Settlement Amount will be divided, *pro rata*, as follows:

For each workweek during which such FLSA Collective Member worked more than 40 hours but did not receive overtime premium pay ("Uncompensated Overtime") during the Relevant Time Period, he or she shall receive a *pro rata* share of the Net Settlement Amount based on the actual number of Uncompensated Overtime hours he or she worked.  (*Id.* ¶ 10(b), PgID 382.) The *pro rata* portion will be calculated based on the individual's Uncompensated Overtime hours as the numerator and the total overtime hours of all FLSA Collective Members as the denominator. "Half of the payments to FLSA Collective Members shall be construed as purported liquidated damages." (*Id.*)

## II.   STANDARD

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Id.* Therefore, "an employee may not waive or otherwise settle a FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by

6

the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Settlements of FLSA claims that are reached in the context of litigation, where "[t]he employees are likely to be represented by an attorney who can protect their rights under the statute," are proper subjects for judicial review and possible approval because they are "more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016) (internal quotation marks and citations omitted). In determining whether a proposed settlement is fair and reasonable, the court may consider several factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted). *See also Williams v. Alimar Sec., Inc.*, No. 13-cv-12732, 2017 WL 427727, at *2-3 (E.D. Mich. Feb. 1, 2017) (citing *Wolinsky* and analyzing these same factors to conclude that proposed FLSA settlement agreement was fair and reasonable). "A district court may choose to consider only factors that are relevant to the settlement at hand." *Snook v. Valley OB-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Wolinsky*, 900 F. Supp. 2d at 336 (citing 29 U.S.C. § 216(b)).

A one-step settlement approval process in FLSA collective actions is appropriate. *See Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (collecting cases). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective

actions under the FLSA[.]").  Because the failure to opt in to an FLSA lawsuit does

not prevent potential members of the collective from bringing their own suits in the

future, FLSA collective actions do not implicate the same due process concerns as

do Rule 23 class actions.  *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir.

1982) (discussing due process concerns present in Rule 23 class action that are not

present in FLSA collective actions).

## III.   ANALYSIS

### A.   The Settlement Agreement Represents a Fair and Reasonable Compromise of Disputed Issues

The Court must first determine "whether the settlement is a fair and reasonable

resolution of a bona fide dispute over FLSA provisions."  *See Williams*, 2016 WL

319596, at *1.  Plaintiff asserts that the Settlement Agreement is reasonable due to

the risks that Plaintiff and the FLSA Collective Members faced should they continue

to litigate, explaining:

> In this case, while Plaintiff and the FLSA Collective Members contend
> that they were employees of Defendants as a matter of economic reality
> and were denied overtime compensation in violation of the FLSA,
> Defendants argue that they properly classified FLSA Collective
> members as independent contractors. Lichten Decl. ¶ 10. After
> evaluating the evidence in this case, the Parties agree that significant
> factual questions remain with respect to liability and damages under
> Plaintiff's theory. *Id.* ¶ 13. Defendants also maintain that the FLSA
> Collective Action Members' claims are subject to individual
> arbitration, and, in the absence of a settlement agreement, it is likely

> that each of the FLSA Collective Members would be required to pursue his or her claims through individual arbitration. *Id*. ¶ 11.

(Pl.'s Mot. at pp. 7-8, PgID 363-64.) This case was actively litigated by both sides, with Defendant filing a motion to dismiss and the parties engaging in discovery and then a full-day mediation.  Thus, a *bona fide* dispute existed between the parties.  *See Lynn's Food Stores*, 679 F.2d at 1352-54 (stating that a district court should approve a FLSA collective action settlement if it was a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties); *Westley v. CCK Pizza Co.*, No. 18-13627, 2019 WL 5653403, at *3 (E.D. Mich. Oct. 31, 2019) (approving FLSA collective action settlement, in part, because of the risks plaintiff faces should he continue to litigate and because defendants intend to contest the statute of limitations).

Plaintiff further contends that the Agreement is fair and reasonable because "Plaintiff's Counsel have performed detailed, week-by-week calculations of the possible overtime damages for each of the FLSA Collective Members were they eventually successful at trial" and "[t]he $142,500.00 settlement requires Defendants to pay more than 70% of the total, unliquidated damages that the FLSA Collective Members could have recovered if they continued to pursue this action and had been successful as trial."  (Pl.'s Mot. at p. 9, PgID 365, citing Lichten Decl. ¶¶ 8, 15, PgID 401, 403.)  Plaintiff asserts that:

The discounted recovery reflects: (1) the fact that Defendants would have vigorously contested the merits of Plaintiff's FLSA claims on the basis that they were properly classified as independent contractors; (2) that Defendants contend that the shorter two-year statute of limitations under the FLSA would have been appropriate, which would limit Plaintiff's and FLSA Collective Members' possible recovery; and (3) that Defendants contend that Plaintiff's and FLSA Collective Members' claims are subject to individual arbitration. *See* Lichten Decl. ¶¶ 10-12; *see also* 29 U.S.C. § 255(a).  Further, if this matter had remained in Court, which Defendants dispute based on arbitration provisions, Defendants would have argued that Plaintiff and the FLSA Collective Members were not "similarly situated" under the FLSA. Were they allowed to proceed in court, and were they ultimately successful at trial, Plaintiff and the FLSA Collective Members would have sought liquidated damages in an amount equal to their back pay award; Defendants would have argued that they acted in good faith and that liquidated damages were not appropriate. *See* Lichten Decl. ¶ 12[.]

(Pl.'s Mot. at pp. 9-10, PgID 365-66.)

In addition, the Court notes that, under the Settlement Agreement, each FLSA Collective Member will receive a *per capita* award from the Net Settlement Amount, as well as an additional amount based on the number of purported overtime hours they worked providing services to Defendants during the Relevant Time Period, with the maximum settlement share of approximately $9,323.45 and the average settlement share approximately $5,455.18.  (*Id.* at pp. 10-11, PgID 366-67, citing Lichten Decl. ¶ 16, PgID 403.)  The Court finds that the scope of releases in the Settlement Agreement is also fair and reasonable as the FLSA Collective Members will release only the wage and hour claims they may have against Defendants and

11

accompanying claims for attorneys' fees and costs, but with no release of prospective rights or non-wage claims, other than with respect to the named Plaintiff in exchange for his Service Award. (*Id.* at p. 11, citing Lichten Decl. ¶ 17, PgID 403; Settlement Agreement ¶ 17, PgID 384.)

Further, the settlement was reached as a result of "arm's-length negotiations." (Pl.'s Mot. at p. 12, PgID 368, citing Lichten Decl. ¶¶ 5-8, PgID 401.) This is supported by the fact that the parties engaged, through counsel, in a full-day, in-person mediation session, followed by additional negotiations. (*Id.*) *See Westley*, 2019 WL 5653403, at *3 (approving FLSA collective settlement, in part, because the settlement was reached as a result of 'arm's length negotiations'") (citing *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.")).

Accordingly, for all the reasons stated above, the Court finds that the Settlement Agreement is a fair and reasonable compromise of disputed issues. *See Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *4 (S.D. Ohio Sept. 9, 2016) ("Allegations of underpayment of overtime hours worked raise

12

a bona fide dispute under the FLSA, and the Agreement resolves them.") (internal citation omitted).

### B.   The Proposed Service Award to the Named Plaintiff is Fair and Reasonable

The Settlement Agreement provides for a "Service Award" of $3,000.00 to the Named Plaintiff, Emmanuel Risbrook, "for his efforts in bringing and prosecuting this matter." (Settlement Agreement ¶ 9(a), PgID 381.)

As explained in *In re Dry Max Pampers Litigation*, the Sixth Circuit "has never approved the practice of incentive payments to class representatives, though in fairness [it has] not disapproved the practice either." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (noting, "[t]hus, to the extent that incentive awards are common, they are like dandelions on an unmown lawn—present more by inattention than by design."); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (noting that the Sixth Circuit has never "explicitly passed judgment on the appropriateness of incentive awards"). However, "[n]umerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix*, 322 F.3d at 897. While the Sixth Circuit recognizes that many courts grant such awards, it notes that courts have expressed a "sensibl[e] fear that

incentive awards may lead to named plaintiffs to expect a bounty for bringing suit

or to compromise the interest of the class for personal gain." *Id.*

Here, Plaintiff represents that Risbrook has been extensively involved in

litigating this case, explaining:

> The Named Plaintiff brought this action on behalf of other consultants
> who provided services to Defendants. He provided his contracts and
> helped Plaintiff's Counsel develop their theories of liability and
> damages models. Lichten Decl. ¶ 20. Plaintiff provided significant
> assistance to Plaintiff's Counsel as they drafted the Complaint,
> reviewed Defendants' document production, and prepared for
> mediation, and the modest incentive/service award of $3,000.00 fairly
> recognizes the services that he has performed in advancing the FLSA
> Collective Members' interests and the time that he dedicated to the
> lawsuit. *Id.* ¶¶ 20-21.

(Pl.'s Mot. at p. 13, PgID 369.) Plaintiff continues that "[c]ourts have routinely

recognized the importance of such awards in wage cases of this nature, where 'the

plaintiff is often a former or current employee of the defendant, and thus, by lending

his name to the litigation, he has, for the benefit of the class as a whole, undertaken

the risk of adverse actions by the employer or co-workers.'" (*Id.* at p. 14, PgID 370,

quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005).)

The Court approves the proposed Service Award of $3,000.00 to Risbrook,

representing a fraction (a little more than half) of the "average settlement award," to

compensate Plaintiff Risbrook for the time and effort he expended in assisting the

prosecution of the litigation, the risks he incurred by becoming and continuing as a

14

litigant, and any other burdens he sustained.   In addition, in exchange for the payment, Risbrook will provide a full release of all claims and "agrees that he is waiving and shall not seek any further engagements by" Defendant Blue Horseshoe. (Settlement Agreement, ¶ 4, PgID 379.)  *See McFarlin v. Word Enter., LLC*, No. 16-cv-12536, 18-cv-10167, 2020 WL 2745300, at *2 (E.D. Mich. May 27, 2020) (approving incentive awards of $10,000 and $5,000 to class representatives for their service in consolidated class and collective wage and hour actions); *Westley*, 2019 WL 5653403, at *3 (approving incentive award of $5,000 to named plaintiff in FLSA collective action); *Daoust v. Maru Restaurant, LLC*, No. 17-13879, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) (approving $5,000 incentive award to named plaintiff in recognition of "the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation").

### C.    Certification of the FLSA Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate for Settlement Purposes

The FLSA allows workers to bring an action either on an individual basis or on a collective basis for himself or herself "and other employees similarly situated." 29 U.S.C. § 216(b).  Under the FLSA, the issues for certification under § 216(b) are two-fold: are the employees similarly situated and do all plaintiffs reflect their

written consent to participate in the action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "To participate in FLSA collective actions, 'all plaintiffs must signal in writing their affirmative consent to participate in the action.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980 (2018) (quoting *Comer*, 454 F.3d at 546). "Only 'similarly situated' persons may opt in to such actions.'" *Id.* However, "similarly situated" does not require that the workers' circumstances be identical. *Comer*, 454 F.3d at 546. The Sixth Circuit has held that there are "three non-exhaustive factors that … [are] relevant to the FLSA's similarly situated analysis: (1) the 'factual and employment settings of the individual[] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Monroe*, 860 F.3d at 397 (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)).

Plaintiff contends, for settlement purposes only, that:

Plaintiff and the FLSA Collective Members in this case are similarly situated, because they had substantially similar job requirements and were subject to a common practice, policy or plan whereby they were all required to perform work without overtime compensation. Plaintiff and FLSA Collective Members performed similar tasks, which generally consisted of providing support and training to healthcare staff in connection with the implementation of a new electronic recordkeeping system. Plaintiffs and the FLSA Collective Members

16

> further have asserted that they worked similar schedules and were
> subject to the same compensation policies and practices—they were
> paid a set hourly rate, and were not paid time-and-a-half for hours
> worked in excess of forty a week.

(Pl.'s Mot. at p. 15, PgID 371, citing Lichten Decl. ¶ 14, PgID 402.)  Based on the

above, the Court finds that Plaintiff has demonstrated the existence of a collective

of similarly situated employees and that certification of the collective sought is

appropriate.  *See Monroe*, 860 F.3d at 404-05 (treating cable technicians as similarly

situated because they did the same job and alleged a single time-shaving policy, even

though they worked different amounts of overtime).

### D.   The Requested Attorneys' Fees and Costs for Plaintiff's Counsel Are Approved

The FLSA allows for a plaintiff to recover his/her attorneys' fees and expenses

under the statute.  *See* 29 U.S.C. § 216(b) (recognizing that the Court "shall, in

addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable

attorney's fee to be paid by the defendant, and costs of the action."). There are two

methods for determining whether a fee is reasonable: the lodestar method and the

percentage-of-the-fund method.  *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436

F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods.

*Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993).

"Where the settlement agreement includes the payment of attorney's fees, the court

must assess the reasonableness of that amount." *Belmont v. Homes of Opportunity, Inc.*, No. 18-10854, 2018 WL 6571145, at *1 (E.D. Mich. Dec. 13, 2018). One-third of the common fund is a reasonable attorneys' fee award, "and has been approved in similar FLSA collective actions…." *See Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (collecting cases); *see also Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created.").

The Settlement Agreement here provides for the payment of Plaintiff's attorneys' fees in the amount of $45,000.00, representing 31.5% of the Gross Settlement Amount. (Settlement Agreement ¶ 9(b), PgID 381.) According to Plaintiff, the contingency fee agreement in this case provided for recovery of actual costs as well as fees equal to one-third of the gross recovery, and thus Plaintiff's Counsel's request here represents a reduction of the fee amount agreed to by their clients. (Pl.'s Mot. at pp. 16-17, PgID 372-73.) *See Osman*, 2018 WL 2095172, at *5 (finding one-third of the common fund a reasonable attorneys' fee because Plaintiffs agreed to pay their counsel that amount in the contingency fee agreement). Plaintiff further asserts that Plaintiff's Counsel have collectively spent more than

18

200 hours in this matter advocating for Plaintiff and the FLSA Collective Members. (Lichten Decl. ¶ 24, PgID 404; ECF No 58-3, Declaration of Sarah Schalman-Bergen ("Shalman-Bergen Decl.") ¶ 12, PgID 411-12; ECF No. 58-4, Declaration of David Blanchard ("Blanchard Decl.") ¶ 9, PgID 441.)  Plaintiff contends that the requested fee is also proper under the lodestar analysis, as Plaintiff's Counsel have spent a combined 244.5 hours in this matter, for a collective lodestar of $103,347.50, and the requested award of $45,000.00 is "significantly lower than this lodestar." (Pl.'s Mot. at pp. 17-18, PgID 373-74.)  Finally, the results achieved by Plaintiff's Counsel supports their requested attorneys' fees, as the Settlement Amount represents approximately 74.04% of the total unliquidated damages which Plaintiff and the FLSA Collective Members could have recovered had they fully prevailed on their claims in this case. (Lichten Decl. ¶ 15, PgID 403.) *See Osman*, 2018 WL 2095172, at *5 (finding that the settlement, "which represents 50% of the alleged owed wages at stake in the case," supports the requested attorney fees in the amount of one-third of the settlement fund).

The Court finds that the attorneys' fees requested are reasonable and therefore are approved.

The FLSA also provide for the reimbursement of costs, *see* 29 U.S.C. § 216(b), and awards of reasonable out-of-pocket costs incurred by Plaintiff's counsel

are routinely approved by courts as part of FLSA settlements. *See Toliver v Jbs Plainwell, Inc.*, No. 1:11-cv-302, 2015 WL 11255451, at *10 (W.D. Mich. Aug. 20, 2015) ("Section 216(b) of the FLSA has been interpreted to include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'") (quoting *Lopez v. Lawns 'R' Us*, Civ. No. DKC 07-2979, 2008 WL 2227353, at *7 (D. Md. May 23, 2008)), *report and recommendation adopted as modified by* 2016 WL 165031 (W.D. Mich. Jan. 14, 2016).

Plaintiff's Counsel requests an award of $742.21 for the costs they have incurred in pursuit of this matter. (Lichten Decl. ¶ 25, PgID 405; Schalman-Bergen Decl. ¶ 23, PgID 416; Blanchard Decl. ¶ 14, PgID 442.) These costs are associated with research, processing client documents, filing costs, processing the records produced by Defendants, and attending mediation. (Lichten Decl. ¶ 25, PgID 405; Schalman-Bergen Decl. ¶ 23, PgID 416; Blanchard Decl. ¶ 14, PgID 442.)

The Court finds that these modest costs were necessary to litigate and settle this action, and the request for such costs is approved.

## IV. CONCLUSION AND ORDER

For all the reasons set forth above, Plaintiff's Unopposed Motion for Approval of FLSA Settlement and for Attorneys' Fees and Costs (ECF No. 58) is **GRANTED**.

The Court **ORDERS** that:

1)      The Parties' Settlement Agreement, including the release of claims set forth therein, is approved as a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq*.).

2)      For settlement purposes only, the following Settlement Collective is certified:

> Plaintiff and the current Opt-In Plaintiffs in *Risbrook v. Blue Horseshoe Network, LLC d/b/a Blue Horseshoe Network, Inc., et al.*, No. 2:19-cv-11262 (E.D. Mich.) (the "FLSA Collective").

3)      The Gross Settlement Amount of $142,500.00 is hereby approved.

4)      The service award to Plaintiff Emmanuel Risbrook in the amount of $3,000.00, to be paid from the Gross Settlement Amount, is approved.

5)      Plaintiff's unopposed request for attorneys' fees and costs is granted and fees in the amount of $45,000.00 and costs and costs of $742.21, both to be paid from the Gross Settlement Amount, are approved.

6)      The Court hereby DISMISSES this case WITH PREJUDICE in accordance with the terms of the Settlement Agreement.  A Final Judgment is entered contemporaneously with this Opinion and Order.

7)      Without affecting the finality of the Final Judgment, the Court reserves exclusive and continuing jurisdiction over this action, the named Plaintiff, and the

FLSA Collective for purposes of supervising the implementation and enforcement of the Settlement Agreement, this Order, and all settlement administration matters.

**IT IS SO ORDERED**

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: September 4, 2020

22